**Gerald MARX, Plaintiff–Appellant,**

v.

**SCHNUCK MARKETS, INC.,
Defendant–Appellee.**

No. 94–3436.

United States Court of Appeals,
Tenth Circuit.

Feb. 7, 1996.

Stephen J. Dennis of Dennis, Stanton and Redlingshafer, L.L.C., Fairway, Kansas, for Plaintiff–Appellant.

Dennis G. Collins, Mary Beth Ortbals, and Lisa K. Boyer of Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, and Nancy Landis of Spencer Fane Britt & Browne, Overland Park, Kansas, for Defendant–Appellee.

Before SEYMOUR, Chief Judge, McKAY, and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

Plaintiff-appellant Gerald Marx, a grocery store employee, appeals from the trial court's order granting summary judgment to defendant-appellee on his retaliation claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and his discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. We have jurisdiction under 28 U.S.C. § 1291.[1] We affirm in part and reverse in part.

## I.

"Oh, what a tangled web we weave, when first we practice to deceive!"[2] Plaintiff's wife, Mrs. Terri Lynn Marx, began employment with defendant on February 25, 1991, under the name "Ms. Green." At that time, plaintiff had been married to her for more than nine months. Notwithstanding defendant's informal policy of not hiring the spouse of a current employee, plaintiff applied for a job with defendant three days after his wife began her employment.

On his application and all other necessary forms, plaintiff listed his marital status as "divorced." He omitted any reference to Mrs. Marx. On his Federal IRS W-4 form he declared that he was "single." Plaintiff contends that he did this because the store

---

1. Plaintiff's amended complaint also included a supplemental state law claim for breach of employment contract and an FLSA claim for unpaid overtime pay. After plaintiff filed his notice of appeal, the district court dismissed these claims by stipulation of the parties and entered final judgment on the claims now before this court. Plaintiff's notice of appeal ripened at that point, allowing this court to assume jurisdiction over

this appeal. *See Kelley v. Michaels*, 59 F.3d 1055, 1057 (10th Cir.1995); *Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir.1988). This case is ordered submitted without oral argument in compliance with the applicable rules.

2. Sir Walter Scott, Marmion, canto VI, stanza 17 (1808).

manager encouraged him to conceal his marital status.

Defendant tells us that it was ignorant of the couple's true marital status, when it hired plaintiff as a dairy/frozen sales person in March, 1991, and that the couple created their own dilemma: Should the couple pretend not to know each other, or should they present some explanation to their co-employees? They chose the latter approach.

The plot of the story, we are told, was a simple one. Plaintiff and his wife would pretend to fall in love, move in together, become engaged, and ultimately announce their marriage. As "subsequently married" employees, plaintiff and his wife would likely be allowed to continue working for defendant.

At first, the plan went well. The Marxes pretended to have begun dating as co-employees. In sequence, they announced to their co-workers their courtship, engagement, and ensuing marriage. Plaintiff changed his emergency contact person with defendant to "Ms. Green," his "fiancee." Mrs. Marx told her fellow employees she wanted to marry plaintiff and have a baby.

The plan resulted in complicating consequences. Plaintiff's male co-workers threw a bachelor party to help Marx and another affianced employee celebrate their "last hours of freedom."[3] Their co-employees also hosted a surprise wedding shower for the couple. There was, of course, no wedding. Unbeknownst to their fellow employees, that ceremony had already occurred.

In the interim, plaintiff advanced to "associate of the month" and in August, 1992, he was promoted to dairy/frozen foods manager. In October, 1992, plaintiff's wife reported to defendant that she believed defendant was failing to pay overtime in accordance with federal law. Defendant promptly conducted an investigation of its wage and hour practices. It developed and circulated an employee overtime survey, approved by the United States Department of Labor, to allow employees to claim any unpaid overtime. Two weeks later, defendant fired Mrs. Marx, citing falsifications on her application for employment and on other official documents. Mr. and Mrs. Marx responded by filing a class action suit based on defendant's failure to pay overtime.

In November, 1992, defendant began citing plaintiff for deficiencies in his job performance. The record contains numerous handwritten entries detailing plaintiff's omissions in stocking and pricing defendant's merchandise through January, 1993.

Defendant mailed the overtime surveys to its current and former employees in December, 1992 and January, 1993. In February, 1993, defendant's management received a complaint from one of plaintiff's co-employees that plaintiff had harassed her about completing the survey. Within three days, defendant questioned plaintiff about his co-worker's complaint against him and instructed plaintiff to complete a questionnaire concerning the incident. Plaintiff responded in writing that he did not remember anything about the events described in the questionnaire. Believing plaintiff had lied, defendant demoted him to stock clerk and transferred him to a different store.

Plaintiff responded by filing this suit, in which he alleged age discrimination. Shortly after an amendment to his complaint adding a claim under the FLSA, defendant took plaintiff's deposition. By the time of his deposition, defendant had become aware of plaintiff's misrepresentations concerning his marital status. The tangled web began to unravel.

Defendant took full advantage of plaintiff's depositions to subject him to withering examination concerning his previous fabrications. Plaintiff was asked about the wedding shower. He admitted attending the shower in April, 1992, but claimed it was for his co-employee and otherwise could not remember its purpose, anything that was said, any pho-

---

**3.** The frivolity of the event should best be characterized in the memorable words of then Chief Judge Cardozo: "the antics of the clown are not the paces of the cloistered cleric." *Murphy v. Steeplechase Amusement Co.,* 250 N.Y. 479, 166 N.E. 173, 174 (1929). The merriment ended with a photograph taken of the plaintiff sitting in a limousine, provided by the co-employees, with an underwear band on his head.

tographs, or any other significant details of the party. He did admit that it seemed like the party was for "some wedding or something," but stated he did not pay much attention to it. Plaintiff's statements are contradicted by affidavits of more than twenty of his fellow employees. They state that plaintiff could not have failed to know that he was attending a wedding shower for himself and Mrs. Marx.

The record reveals numerous other instances of what defendant calls plaintiff's "pinnochion" behavior. On June 27, 1994, the day before the pretrial conference in this case, defendant fired plaintiff for lying. During the pretrial conference the next day, plaintiff expanded his FLSA claim to include a claim of retaliatory firing.

## II.

■ We review de novo whether defendant is entitled to summary judgment. *Durham v. Xerox Corp.*, 18 F.3d 836, 838 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994). It is well settled that summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

## III.

■ We turn first to plaintiff's ADEA claim.[4] A plaintiff demonstrates a prima facie case of age discrimination by showing that (1) he was within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of this work; and (4) he was replaced by a younger person. *Cockrell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir.1986). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995) (citing *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)). "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)).

In *Randle,* through en banc consideration of footnote 17, *id.* at 452 n. 17, we settled the plaintiff's burden at the summary judgment stage. An ADEA cause of action qualifies for the same analysis. If the defendant has advanced a facially nondiscriminatory motive for the discharge, to avoid dismissal on summary judgment the plaintiff must present evidence that the nondiscriminatory reason advanced by the defendant "was pretextual—i.e., unworthy of belief." *Id.* at 451. If a civil rights plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.* at 452 n. 17. Our task, then, is to determine where plaintiff's ADEA claim fits in the *Randle* topography.

■ The district court determined, for summary judgment purposes, that plaintiff established a prima facie case of discrimination. In response, defendant advanced two nondiscriminatory justifications: (1) with regard to his demotion, that plaintiff lied on the questionnaire submitted to him after the "harassment" incident, and (2) with regard to his firing, that plaintiff lied on his employment application, in statements to his fellow employees concerning his marital status, and during depositions taken in this case. Defendant having advanced these facially nondiscriminatory reasons, the issue remaining for our determination is whether plaintiff proffered evidence that the reasons asserted by defendant are pretextual. *Id.* at 451. "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer *or* . . . that the employer's proffered explanation is unworthy of

---

**4.** On appeal, plaintiff alleges that his firing constituted a discriminatory retaliation under the ADEA. This claim would have presented a closer question than the one analyzed in part III, however, plaintiff did not raise the ADEA retaliation claim below, and we will not entertain it for

the first time on appeal. *See Oyler v. Allenbrand,* 23 F.3d 292, 299 n. 8 (10th Cir.1994). The district court treated both the demotion and the firing as discrimination claims under the ADEA, and we do review that ruling.

credence.' " *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1455 (10th Cir.1994) (emphasis supplied) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

■ In deciding whether the plaintiff's proffered evidence of pretext is adequate to avoid summary judgment, we next survey the ridge created by footnote 14 of *Randle.* (In doing so, we sympathize with practitioners who must labor over footnotes in our decisions—with which this opinion is itself burdened—to determine the contour of the divide.) Footnote 14 denotes the rule that if a civil rights plaintiff concedes that the real reason for the employer's action was a motive not prohibited under the civil rights laws, such a concession mandates granting of summary judgment to the employer. *Randle,* 69 F.3d at 451 n. 14. By implication, footnote 14 connotes the rule that if a civil rights plaintiff concedes, for purposes of establishing pretext, that the *sole* reason for the discharge was a motive prohibited by a law entirely different from the one under summary judgment scrutiny, such a concession mandates grant of summary judgment as to the latter claim.

■ Thus, we ask: In advancing evidence of pretext here did the plaintiff fatally cripple his ADEA claim by asserting, as his only supportable basis for showing pretext, that the "real" reason for his discharge was defendant's retaliation for his having filed a FLSA claim? We conclude that he did. Scrutinizing the briefs and summary judgment record, it is clear that plaintiff's consistent position has been that reasons advanced by the defendant for his discharge are not the true reasons, that instead, retaliation for the filing of FLSA claims is the true reason. The plaintiff argues here that the defendant's own evidence supports plaintiff's theory of retaliation for "conduct which would clearly have been 'protected' under the FLSA." Appellant's Reply Br. at 1. Reviewing the record de novo, as is our duty under *Durham v. Xerox Corp.,* 18 F.3d at 838, we conclude that there is sufficient evidence in the record to create a genuine issue of fact as to whether the defendant's reason for discharging the plaintiff was retaliation for having filed a FLSA claim. In advancing his theory of FLSA retaliation in order to counter the defendant's proffered nondiscriminatory motives, however, we also conclude on the record before us that the plaintiff has effectively abandoned his ADEA claim.

Relying upon *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the trial court essentially concluded that the relevant inquiry to determine if there is a genuine issue of material fact as to whether the plaintiff has proffered the quantum of evidence of pretext necessary to rebut the defendant's asserted nondiscriminatory reason, is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. The trial court decided that the plaintiff did not offer any evidence which rises to the level of creating an *Anderson v. Liberty Lobby* evidentiary dispute on the pretext issue. We agree. The evidence advanced by plaintiff to support his claim of FLSA retaliation might be believed, but, even if believed, it does not allow an inference of ADEA discrimination. If plaintiff's claim of FLSA retaliation is not believed, he suffers dismissal because on the record before us any other evidence of pretext is so one-sided that the defendant would prevail as a matter of law.

Our decision in this case should not be read as a move toward a "pretext-plus" standard. Our en banc decision in *Randle* has placed that issue in repose. *See* 69 F.3d at 452 n. 17. Nor should it be read as requiring summary judgment for defendant if a civil rights plaintiff who asserts multiple civil rights claims, in the course of proving pretext, stresses one claim more than another. Indeed, in a typical case, all claims will survive. Here, plaintiff advances evidence of pretext which, if believed by the jury, supports only the proposition that defendant's true and sole reason for firing him was retaliation for his having filed, and having encouraged others to file, an FLSA claim. The record before us does not allow any other inference. Thus, we affirm the summary judgment dismissal of plaintiff's ADEA claim.

## IV.

■ We turn next to plaintiff's FLSA retaliation claim. This court applies a "motivating factor" test to such claims. "When the 'immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge exist.' If retaliation is not the motivating factor, then the discharge is not unlawful." *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) (citations and footnote omitted).

■ Plaintiff argues that defendant retaliated against him after he and his wife filed their FLSA claim. Retaliation allegedly began with plaintiff being "written up" following his FLSA complaint, escalated with his demotion for lying about discussions relating to a FLSA questionnaire, and continued with the use of discovery in his FLSA suit to dredge up information concerning unrelated wrongdoing. It ended with his termination, which was based on information revealed through discovery.

We have recognized that protected conduct closely followed by adverse action may justify an inference of retaliatory motive. *See Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 386 (10th Cir.1984) (Title VII judgment upheld based in part on adverse action closely following protected activity). Although we have rejected attempts to unduly stretch the "close temporal proximity" required under this standard, *see Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir.1994), and cases cited therein, we also believe that the phrase "closely followed" must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the FLSA complaint and only culminates later in actual discharge. *Cf. Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 n. 4 (6th Cir.1984) (reversing judgment for defendant and remanding for further consideration of

Title VII retaliation claim where discharge occurred nearly one and one-half years after complaint but pattern of retaliation allegedly began soon after complaint was filed). Granting plaintiff the benefit of every favorable inference, the pattern of actions taken by defendant precludes summary judgment concerning defendant's motivation in demoting plaintiff and terminating his employment.[5]

There are genuine issues of material fact concerning defendant's motivation. Such questions of fact, in retaliation cases as well as discrimination cases, are for the trier of fact. *See Randle*, 69 F.3d at 453. We therefore reverse summary judgment on plaintiff's FLSA retaliation claim.

## V.

The judgment of the district court is AFFIRMED save for summary judgment on plaintiff's retaliation claim, which is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

---

5. In his motion for reconsideration before the district court, plaintiff argued that defendant could not rely on the misstatements uncovered during the discovery process as justification for terminating his employment, citing *McKennon v. Nashville Banner Publishing Co.*, — U.S. —, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). The district court correctly concluded that it had not relied on after-acquired evidence. *McKennon* does not apply under the circumstances of this case.