**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LIA LEA RICHMOND,

      Plaintiff - Appellant,

vs.

ONEOK, INC.,

      Defendant - Appellee.

No. 96-6228

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 95-CV-1267)

---

Steven M. Angel, Law Offices of Steven M. Angel, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Larry D. Henry (Rebecca Brett and Patrick W. Cipolla with him on the brief), Gable, Gotwals, Mock, Schwabe, Kihle & Gaberino, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before TACHA, BALDOCK, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

    Plaintiff Lia Lea Richmond filed this action against Defendant ONEOK, Inc., alleging that her employment with ONEOK was terminated in retaliation for her assertion of rights under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and the

Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. She also claimed that the termination breached an implied contract of employment, or in the alternative, that her whistleblowing activities created an exception to the at-will employment contract she had with ONEOK. On summary judgment, the district court ruled against Ms. Richmond on all but one limited claim. Ms. Richmond subsequently filed a motion for entry of final judgment under Fed. R. Civ. P. 54(b), agreeing to dismiss the remaining claim if on appeal the summary judgment against her is affirmed. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Facts

Ms. Richmond began working as a secretary at ONEOK in 1984 until her termination in July 1994. During that time her employment was at-will. While employed at ONEOK, Ms. Richmond was given an employee handbook, which permitted discretion in imposing discipline.[1] Both the introduction to the discipline section, as well as the

---

[1] The handbook stated in relevant part:

DISCIPLINE
It is the responsibility of the Company to make reasonable, work-related rules and regulations pertaining to conduct, safety, job performance, attendance, and production. It is the responsibility of the employees to maintain regular attendance and acceptable job performance and to follow all other work-related rules made known to them. The employment relationship is at will and may be terminated by the employee or the Company at any time for any reason, with or without notice.

In the event that an employee has a problem with complying with these

introduction to the handbook, contained a clear statement that the employment relationship between ONEOK and its employees was at-will.

In 1991, Ms. Richmond was assigned to ONEOK's Oklahoma City claims department as an administrative secretary. From 1992 to April 1994, several performance issues arose, with Ms. Richmond's supervisor documenting what he considered to be unacceptable performance.

In April 1994, Ms. Richmond's supervisor refused to approve her claim for overtime pay under FLSA. She went to the personnel department to resolve the dispute, and also notified the department that her supervisor had engaged in "illegal and unethical conduct." She was apparently referring to the fact that she had seen her supervisor's 1993 federal income tax return, which did not reflect any income other than his salary earned at ONEOK. Ms. Richmond claims that her supervisor threatened to terminate her when he heard of her accusation. On April 20, 1994—two days after the personnel department resolved the overtime dispute in her favor—Mrs. Richmond was placed on a one-day

> rules, it is the responsibility of the supervisor to initiate appropriate discipline. Depending on the nature and seriousness of the violation and the past work record of the employee, discipline may begin with reminder counseling or disciplinary counseling or decision-making leave or termination. Continued inability or unwillingness to adhere to work rules during any stage of this discipline procedure will result in termination. Each type of discipline will be documented by the supervisor and shown to and signed by the employee to acknowledge that he or she has read the documentation. . . .

Aplt. App. at 300-01.

suspension for poor work performance.

Upon her return, Ms. Richmond's supervisor required her to sign a confidentiality statement regarding work-related issues. She considered this action retaliatory in nature, and reported the statement to the personnel department. On June 1, Ms. Richmond took leave to care for her daughter, who had chicken pox. Although she did not invoke FMLA at the time, she now claims that her leave fell within the act. When she returned on June 6, she was again placed on a one-day suspension for unsatisfactory performance. Mrs. Richmond was again on leave from July 2, 1994 until July 17, 1994. When she returned, she was terminated.

## Discussion

We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Rule 56(c). United States v. City and County of Denver, 100 F.3d 1509, 1512 (10th Cir. 1996). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We construe the factual record and reasonable

- 4 -

inferences therefrom in the light most favorable to the nonmovant. Gaylor v. Does, 105 F.3d 572, 574 (10th Cir. 1997).

## I.  Retaliation Claims

We review Ms. Richmond's retaliation claims under the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). Under that standard, the plaintiff initially must establish a prima facie case. Id. The burden then shifts to the employer to offer a legitimate non-retaliatory reason for the plaintiff's termination. Id. If the employer offers such a reason, the burden then shifts back to the plaintiff to show that "'there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.'" Id. (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

In order to establish a prima facie claim for FLSA or FMLA retaliation, a plaintiff must show that:  (1) she engaged in activity protected under either act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action. Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483, 486 (10th Cir. 1991). A plaintiff can demonstrate pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . reasons for its action," which "a reasonable factfinder could

rationally find . . . unworthy of credence." Morgan, 108 F.3d at 1323 (citations and internal quotations omitted). Mere conjecture that the employer's reason is pretext, however, will not defeat a motion for summary judgment. Id.

### A. FLSA retaliation claim

Ms. Richmond claims that a suspension in April 1994 and her ultimate termination in July 1994 were in retaliation for her claim to overtime pay under FLSA. The district court denied ONEOK's summary judgment on the issue of whether the suspension was retaliatory.[2] The court granted summary judgment as to the termination, however, holding that the three-month period of time between her protected activity and termination was insufficient to establish a causal connection. See Archuleta, 936 F.2d at 486. Ms. Richmond contends that the district court's ruling directly contradicts the Tenth Circuit's panel decision in Marx v. Schnuck Markets, Inc., 76 F.3d 324 (10th Cir.), cert. denied, 116 S. Ct. 2552 (1996). We disagree.

We note first that Ms. Richmond mischaracterizes the district court's holding. The court did not hold, as Ms. Richmond argues, that the three-month period between the protected activity and her termination destroyed any causal connection. Rather, the district court held that the three-month period between the activity and termination,

---

[2] Although ONEOK spends part of its brief arguing that the suspension was not retaliatory, we note that ONEOK has not cross-appealed the district court's denial of summary judgment as to Ms. Richmond's suspension.

standing alone, does not establish a causal connection. This is not inconsistent with Marx. The court in Marx held only that, while retaliatory intent may be inferred from adverse action which "closely followed" the plaintiff's protected activity, "the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the FLSA complaint and only culminates later in actual discharge." 76 F.3d at 329 (emphasis added). Here, there is no pattern based on a single request for overtime pay; hence, Ms. Richmond has not established a causal connection.

## B. FMLA retaliation claim

Ms. Richmond also claims that her suspension in June and termination one month later were in retaliation for her use of FMLA leave. The district court granted summary judgment against Ms. Richmond on her FMLA claim, holding that the reason for which she took leave—her daughter's chicken pox—was not a "serious health condition" within the meaning of FMLA and that she failed to give ONEOK adequate notice that she intended to take FMLA leave. We affirm the district court's decision on other grounds. See Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

Assuming without deciding that Ms. Richmond proved a prima facie case of FMLA retaliation, she did not carry her burden of showing that ONEOK's proffered

reasons for her dismissal were pretextual. ONEOK's stated reason for Ms. Richmond's suspension and discharge was deficient work performance. Ms. Richmond's supervisor, in fact, documented fifteen incidents between February 1991 and March 1994 which demonstrated her poor work performance; Ms. Richmond acknowledged that each of these incidents occurred, but denied any fault. Moreover, Ms. Richmond herself kept a diary which detailed 23 separate incidents, many of which also demonstrated her poor performance.

Ms. Richmond responds that ONEOK's proffered reason is pretextual because she did not receive any "documented counseling" regarding her poor performance pursuant to the handbook. The mere fact that each incident of deficient work was not "documented" does not address the inherent performance issues. Ms. Richmond failed to show that ONEOK's proffered reason for her dismissal was one which a rational jury could find "unworthy of credence." Morgan, 108 F.3d at 1323.


## II. Implied Contract

Ms. Richmond next claims that ONEOK's employee policy manual created an implied contract, giving her the right to be disciplined progressively and to be terminated only on grounds provided in the manual. The district court granted summary judgment against Ms. Richmond on this claim, holding that the employee manual did not create an implied contract. We agree.

Under Oklahoma law, an employment contract of indefinite duration may be terminated at will by either party. Burk v. K-Mart Corp., 770 P.2d 24, 26 (Okla. 1989). However, at-will employment may, under some circumstances, be converted by implied contract to employment which may only be terminated on certain grounds. Dupree v. United Parcel Serv., Inc., 956 F.2d 219, 222 (10th Cir. 1992). The employee's implied contract claim "must be reasonable under an objective standard, not merely the subjective belief of the employee." Hayes v. Eateries, Inc., 905 P.2d 778, 784 (Okla. 1995).

Ms. Richmond claims that ONEOK's policy manual created an implied contract, and argues, relying upon Johnson v. Nasca, 802 P.2d 1294 (Okla. Ct. App. 1990), that the clear and unambiguous disclaimers contained in ONEOK's handbook do not prevent the finding of an implied contract. The court in Johnson held that despite the disclaimers contained in the handbook, "when viewed in conjunction with a pattern [or] practice indicating the adoption and consistent use of these procedures, [the handbook] may lead reasonable minds to differing conclusions about the existence of implied contractual rights to use of the procedures." Id. at 1297 (emphasis added). Here, the record is devoid of any evidence indicating such a "pattern or practice." The manual does not mandate that progressive discipline be imposed, but only states that such discipline may be imposed, at the supervisor's discretion. No reasonable employee could view the handbook as creating an implied contract.

### III. Public Policy Exceptions to At-Will Employment

Finally, Ms. Richmond argues that her discharge was in violation of public policy. Oklahoma law recognizes an exception to the at-will employment relationship when "the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." Burk, 770 P.2d at 28. The Burk exception to at-will employment, however, is a narrow one, and is to be "tightly circumscribed." Id. at 28-29. Ms. Richmond claims that her discharge was in violation of the public policies expressed in FLSA, FMLA, and state whistleblowing protections. The district court held that her discharge was not contrary to a clear mandate of Oklahoma public policy.

With respect to Ms. Richmond's Burk claims based on FLSA and FMLA, we have already held that she has no claim under either of those acts. Even if she had valid claims under those acts, however, this circuit has already ruled that Burk claims must have their basis in Oklahoma state law, McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1487 (10th Cir. 1996), cert. denied, 117 S. Ct. 1468 (1997). Ms. Richmond has failed to produce, nor have we found, any Oklahoma law which would apply FLSA or FMLA to Ms. Richmond's situation. Moreover, even if there were such a law, we note that Ms. Richmond's Burk claim might still be barred if that law provided adequate remedies. See List v. Anchor Paint Mfg. Co., 910 P.2d 1011, 1013-14 (Okla. 1996).

We similarly reject Ms. Richmond's claim that Oklahoma law provides an exception to at-will employment on the basis of her "internal whistleblowing"—that is,

her reports to ONEOK's personnel office of her supervisor's "illegal and unethical activity." This court has already held that there is no clear mandate of Oklahoma public policy against terminating employees for whistleblowing activity. <u>Burk v. K Mart Corp.</u>, 956 F.2d 213, 214 (10th Cir. 1991) (finding no clear mandate in Oklahoma law against termination for whistleblowing).

AFFIRMED.