**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CAROLYN HANSEN,

      Plaintiff - Appellant,

      v.

ALTA SKI LIFTS COMPANY and
ALAN ENGEN,

      Defendant - Appellee.

No. 96-4209
(D. Ct. No. 95-CV-528-J)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before TACHA, KELLY, and LUCERO, Circuit Judges.

---

      Plaintiff Carolyn Hansen sued defendants Alta Ski Lifts Company ("Alta")

and Alan Engen under Title VII, 42 U.S.C. § 2000e-3(a), alleging that the

defendants discriminated against her in retaliation for her filing a Title VII sexual

harassment suit. The United States District Court for the District of Utah entered

summary judgment for the defendants and dismissed Hansen's claims. Hansen

now appeals the entry of summary judgment. We exercise jurisdiction pursuant to

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

28 U.S.C. § 1291 and affirm.

## BACKGROUND

Hansen began working for Alta as a ski instructor in 1983. In May 1992, Hansen and other female ski instructors filed a Title VII suit against Alta and the then-director of the Alta ski school, Paul Jones, based on claims that Jones had sexually assaulted them. The parties to that suit negotiated a settlement and the claims were dismissed in the summer of 1993. The plaintiffs, including Hansen, then returned to work at Alta for the 1993-94 ski season under new ski school director Alan Engen.

Hansen asserts that after returning to Alta, she was treated differently from other employees as a result of her participation in the sexual harassment suit. First, Hansen contends that she was affected adversely by the ski school's method of assigning her lessons during the 1993-94 ski season because she had fewer teaching opportunities than the other instructors. Hansen also contends that Alta discriminated against her by taking disciplinary action against her for having an alleged poor attitude. Hansen argues both that the action was unwarranted and that even if she did have an offensive demeanor, she was treated differently than another employee with the same problem. Finally, she asserts that Alta decided not to invite her back to teach during the 1994-95 ski season in retaliation for her Title VII suit.

Engen testified that he took disciplinary action against Hansen because of his own personal observations and complaints from the ski school staff indicating that she was confrontational and disrespectful toward the staff and had communication problems. Engen stated that when he met with her she refused to acknowledge these problems, leading him to decide not to invite her back.

## DISCUSSION

We review a grant of summary judgment de novo. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if the facts in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)). In reviewing the entry of summary judgment, we must construe all facts and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. See id. To defeat summary judgment, the nonmoving party must show a "genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48 (emphasis in original).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in protected opposition to Title VII

discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1381 (10th Cir. 1994). Hansen's participation in the Title VII suit against Alta and Jones satisfies the first prong of this test. See 42 U.S.C. § 2000e-3(a) (stating that filing Title VII action constitutes protected activity). The other two elements require more discussion.

## 1. Adverse Action

To meet the second prong of her prima facie case, Hansen alleges three forms of adverse action by Alta. First, she refers to Alta's decision not to invite her back for the 1994-95 season. This constitutes adverse action. Although Hansen was an at-will employee, at-will status does not preclude a plaintiff from bringing a Title VII retaliation claim. See, e.g., Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1366-67 (10th Cir. 1997) (addressing Title VII retaliation claims of an at-will employee).

Second, Hansen alleges that Engen took adverse action against her when he "undertook to discipline [her] without basis and in so doing treated her differently than other employees." Complaint ¶ 12. The disciplinary action here consisted of a two-hour meeting between Hansen and Engen to discuss alleged attitude and

behavioral problems, at the end of which Engen requested that Hansen sign a "Commitment of Understanding and Agreement" expressing a commitment to "work in harmony" with all Alta employees.  Adverse action may include disciplinary action taken against the plaintiff.  See Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir.) (noting that pattern of alleged retaliation began with plaintiff being "written up"), cert. denied, 116 S. Ct. 2552 (1996).  We will assume, for purposes of evaluating plaintiff's prima facie case, that the disciplinary action here constitutes adverse action.

Third, Hansen asserts that Alta "refus[ed] to make available to [her] ski lessons on the same basis as others who were similarly situated."  Complaint ¶ 10.  Specifically, Hansen contends that Engen instructed the ski staff to give her lessons last.  Even looking at the facts in the light most favorable to the plaintiff as the non-moving party, there is no merit to her contentions that Alta took adverse action against her in the way it assigned lessons.[1]

---

[1] On the scanty record before us, it is impossible to determine exactly how the ski staff assigned lessons to the plaintiff, and how or why this may have varied from normal practice.  Appellant's Appendix includes only highly selective excerpts from the relevant depositions.  As reproduced in the record, at least four deponents' explanations of Hansen's lesson assignments for the 1993-94 season are incomplete, beginning or ending abruptly in mid-sentence.  See, e.g., Appellant's App. at 179 (cutting off Annette Carhart's deposition in midst of discussion about how Hansen's lessons were scheduled); id. at 186 (cutting off David Robinson's deposition in midst of discussion about lesson assignments); id. at 304-05 (cutting off, in mid-sentence, Engen's description of a change in Hansen's teaching status during the 1993-94 season, and picking up seven pages later in the deposition); id. at 332-33 (skipping from p. 38 to p. 41 in Robinson's deposition in

Hansen was one of seven ski instructors on "independent status," a group of Alta's more experienced ski instructors created by Engen for the 1993-94 season. Hansen requested and received independent status even though, as the result of an injury, her teaching hours from the 1992-93 season did not make her eligible for independent status. "Independents" were expected to generate their own clients. They also could be assigned walk-in clients; Hansen contends that she was discriminated against in the assignment of these walk-in lessons. Alta produced evidence, which Hansen does not dispute, that Hansen was assigned 28 lessons in the 1993-94 season—placing her squarely in the middle of the seven independents with regard to assigned lessons. See Appellant's App. at 480 (showing that the numbers for the other six independent instructors were 8, 11, 26, 44, 49, and 57 lessons). Hansen asserts that her total numbers of students and teaching hours were lower than all the others. However, those numbers are not evidence of disparate treatment or adverse action by Alta. As Alta points out, Alta is

_____

middle of discussion about Hansen's status); id. at 344 (beginning excerpt from Lynn Nichol's deposition in middle of discussion about Hansen's unhappiness with scheduling); id. at 358-59 (skipping from p. 33 to p. 44 in Carhart's deposition, cutting off discussion of Engen's instructions to ski staff regarding Hansen's lessons); id. at 423 (cutting off in middle of question to Engen about his instructions to ski school staff); id. at 453 (picking up Robinson deposition in middle of statements about Hansen's teaching status). At any rate, any factual dispute regarding the ski staff's approach to assigning Hansen lessons is immaterial, given our finding that Hansen was not adversely affected in the assignment of lessons. See Liberty Lobby, 477 U.S. at 247-48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.").

responsible only for the assigned numbers; Hansen herself was responsible for arranging the non-assigned lessons. The total numbers of lessons are irrelevant to Hansen's allegations of adverse action by Alta in assigning lessons.

Thus, we find that Hansen experienced adverse action when Engen took disciplinary action against her and when he decided not to invite her back for the 1993-94 season, but that Alta's manner of assigning lessons did not constitute adverse action.

**2.      Causation**

To complete her prima facie case, the plaintiff must show that there was a causal connection between her protected activity and the adverse action taken against her. We agree with the district court that plaintiff has failed to demonstrate a causal connection between her participation in the 1992 Title VII suit and either the disciplinary action or the decision not to invite her back. Thus, she fails to make the third part of her prima facie case.

a.      Timing

Hansen relies heavily on the timing of the adverse actions to show that they were prompted by her participation in the 1992 sexual harassment suit. "[R]etaliatory motive can be inferred from the fact that an adverse employment action follows charges by an employee against his/her employer." Candelaria v. EG&G Energy Measurements, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994). An

inference based on timing "can only be made, however, where '<u>close temporal</u>

<u>proximity</u>' exists between the bringing of charges and the subsequent adverse

action." <u>Id.</u> at 1262 (quoting <u>Smith v. Maschner</u>, 899 F.2d 940, 948-49 (10th Cir.

1990)) (emphasis added). Applying this rule, we have held that a two-day time

lapse can support an inference of causal connection. <u>See</u> <u>Sauers v. Salt Lake</u>

<u>County</u>, 1 F.3d 1122, 1128 (10th Cir. 1993). By contrast, a period of three or four

months or more between the protected activity and the adverse action generally is

insufficient to support an inference of causation. <u>See</u> <u>Richmond v. ONEOK, Inc.</u>,

120 F.3d 205, 209 (10th Cir. 1997) (finding three months insufficient); <u>Conner v.</u>

<u>Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997) (holding four

months insufficient); <u>Candelaria</u>, 33 F.3d at 1262 (holding three-year intervening

time period insufficient). "Unless the termination is very closely connected in

time to the protected conduct, the plaintiff will need to rely on additional

evidence beyond mere temporal proximity to establish causation." <u>Conner</u>, 121

F.3d at 1395. The plaintiff here filed her sexual harassment claim in May, 1992.[2]

The earliest adverse action taken by Alta was over two years later, on June 13,

1994, when Engen called Hansen to his office to discuss complaints he had

received about her behavior. Engen did not make the decision not to rehire

---

[2] The relevant date for this plaintiff's protected activity is the filing date, <u>see</u>
<u>Candelaria</u>, 33 F.3d at 1262, not, as plaintiff suggests, the date the lawsuit was settled.

Hansen for the 1993-94 season until July, 1994.  Our cases demonstrate that an intervening period of over two years cannot be considered "close temporal proximity," such that an inference of causation is warranted based on timing alone.

       b.      <u>Allegedly Differential Treatment</u>

Hansen also attempts to prove causation by showing that she was subject to adverse action when other, similarly situated employees were not.  Both the plaintiff and Steve Johnson, another Alta employee, met with Engen to discuss concerns about their attitude and behavior.  While Engen presented both the plaintiff and Johnson with a document of "Understanding and Agreement," he only required the plaintiff to sign it.  Engen explained that when he met with Johnson and went over the memorandum with him, Johnson appeared conciliatory and willing to change, so Engen decided not to require him to sign the document.  By contrast, Hansen was not at all conciliatory or understanding, so Engen felt it was necessary to take the step of having her sign a memorandum.[3]   Hansen alleges that Engen's current explanation differs from his contemporaneous notes and contends that Johnson's attitude actually had an overall hostile tone.  However, Engen's contemporaneous notes do reflect that Johnson's attitude had

---

[3] The Hansen memorandum of understanding was very similar to the Johnson memorandum.  <u>Compare</u> Appellant's App. at 287 (Hansen memo) <u>with</u> <u>id.</u> at 478 (Johnson memo).

changed and that he appeared to accept Engen's comments.[4]  See Appellant's App. at 479 (Engen's notes of October 6, 1993).  Thus, Engen had legitimate reasons for requiring plaintiff, but not Johnson, to sign the memorandum.  There is no reason to believe that Engen's decision to take disciplinary action against the plaintiff, including the request to sign the memorandum, was caused by the plaintiff's participation in the Title VII suit.

      c.      Alleged Comments by Lynn Nichol

Hansen contends that when she complained to Lynn Nichol, one of her supervisors, about the manner in which she was being assigned lessons, his response was to tell her that she "should just talk to [her] lawyer."  Hansen characterizes this statement as "a definite reference" to her earlier lawsuit against Alta.  Nichol counters that his only reference to attorneys was in response to Hansen's assertion that she was going to get a lawyer: "I said: 'Well, you do what you have to do.'" Appellant's App. at 342.  Even assuming Hansen's version of Nichol's remark is accurate, and even if he did intend it as a reference to her prior

---

[4] In her brief, the plaintiff twice asserts that Johnson had "refused to sign" the memorandum drafted by Engen.  To characterize this statement as mere exaggeration would be too generous.  Engen's contemporaneous notes, as well as his deposition testimony and affidavit, clearly state that Engen decided not to ask Johnson to sign the memo.  See Appellant's App. at 319-20 (deposition), id. at 470-72 (affidavit); id. at 479 (notes dated Oct. 6, 1993, describing the meeting with Johnson).  Plaintiff does not cite to any evidence, nor could we find any, that supports her contention that Johnson "refused" to sign the memo.

legal action, we find that the comment is irrelevant and does not tend to prove causation.  See Liberty Lobby, 477 U.S. at 247-48 (requiring nonmoving party to demonstrate existence of a "genuine issue of material fact").  Engen, not Nichol, took disciplinary action against Hansen and made the decision to terminate the plaintiff.

Hansen also alleges that Nichol boasted to other ski instructors that he had fired Hansen, a comment Nichol denies making.  Given that it was Engen, not Nichol, who made the decisions regarding adverse action against the plaintiff, we find this allegation immaterial as well.

d.      Failure to Follow Policy

Next, Hansen asserts that one can infer causation from Engen's alleged failure to follow company policy in disciplining her.  However, Alta had no formal mechanism or written policy for disciplining its employees.  The record does include some testimony from Engen and Nichol regarding steps that they would try to take with employees who appeared to have attitude or behavior problems.[5]  See Appellant's App. at 293, 338-39.  For example, Nichol stated that he would try to call the employee into his office to discuss inappropriate behavior, although he also testified that he never called Hansen into his office.

---

[5] Here, too, the record is inadequate.  See Appellant's App. at 292-94 (containing Engen's deposition testimony regarding his approach to disciplining employees, and including pages 43, 45, and 47 of the deposition, but omitting pages 44 and 46).

See id. at 338-39.  However, nothing in the record indicates that Alta policy

precluded Engen from dealing directly with allegedly problematic employees, as

he did with Hansen.  Moreover, his treatment of Hansen is very similar to his

treatment of Steve Johnson earlier in the same season.  Given the informal nature

of Alta's procedures for disciplining employees, we cannot find that in taking this

course, Engen varied from normal procedures in such a way as to raise an

inference that his actions were related to Hansen's lawsuit of two years earlier.

e.      Evidence of Pretext

Hansen argues that Engen's reasons for disciplining and eventually

terminating her were pretextual.  Hansen contends that Engen's assertions

regarding her disrespectful manner are belied by statements from others that her

behavior was not inappropriate, or at most, was no different from that displayed

in her previous years at Alta.[6]  See Appellant's App. at 239, 242, 246, 249.

Although she has produced affidavits that challenge Engen's proffered reasons for

the adverse action, Hansen has offered no evidence that suggests that his real

reason was retaliation.  We find this failure significant.

Evidence of pretext can be relevant to show discriminatory intent, but

_____

[6] Again, the incomplete nature of the deposition excerpts in the Appellant's
Appendix makes it very difficult to determine the nature of the factual dispute here, or to
determine if a factual dispute exists at all.  See, e.g., Appellant's App. at 311-314
(reproducing selective, non-consecutive pages from Engel's deposition).

- 12 -

Hansen misunderstands the nature of her burden in this case. In a discrimination case, evidence rebutting a defendant's explanation for the action generally is not relevant until _after_ the plaintiff has met the burden of proving her prima facie case. Once the plaintiff proves the prima facie elements of discrimination, an inference of discriminatory motive is raised and the defendant assumes a burden to produce a legitimate, nondiscriminatory reason for the adverse action. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-54 (1981). Then, for the purpose of defeating a motion for summary judgment, it is sufficient for the plaintiff to present evidence that the proffered explanation is not the real one. See Randle v. City of Aurora, 69 F.3d 441, 451-453 & n.17 (10th Cir. 1995) (holding that to avoid summary judgment, plaintiff need not prove that discrimination is the real motive, but only that the proffered reason is pretextual); but cf. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) (holding that, at trial, mere rebuttal of defendant's proffered reason allows but does not compel a finding of discriminatory motive). Plaintiff here cannot defeat summary judgment simply by showing pretext, as she has yet to prove her prima facie case. To satisfy the causation element of her prima facie case, she must provide evidence, either direct or circumstantial, that her protected activity caused the defendants to take adverse action. Evidence contesting defendant's given reason for terminating her, without more, does not support an inference of causation at this

stage.

In short, on the record before us we find no evidence of causation.

**CONCLUSION**

Plaintiff has failed to produce evidence, direct or circumstantial, to show that the adverse action taken against her was caused by her participation in the 1992 sexual harassment suit.  Thus, she has failed to establish a prima facie case of retaliation, and we AFFIRM the district court's entry of summary judgment for the defendant.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge