FILED
United States Court of Appeals
Tenth Circuit

December 17, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DEBRA BENTON,

        Plaintiff-Appellant,

v.

ADAMS COUNTY BOARD OF
COUNTY COMMISSIONERS;
JOHN LEFEBVER,

        Defendants-Appellees.

No. 08-1089
(D.C. No. 1:06-cv-1406-EWN-MEH)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Plaintiff-appellant Debra Benton appeals the district court's grant of

summary judgment to defendants-appellees on her claim that defendants-appellees

violated her constitutional right to free speech under the First Amendment.

Ms. Benton, a former employee of the Adams County Treasurer's Office, argued

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that she was fired by the Treasurer, defendant John LeFebvre, on July 22, 2004, in retaliation for exercising her right to free speech. Mr. LeFebvre claimed that Ms. Benton was not terminated because of her speech but because her position was unnecessary and presented evidence that after Ms. Benton's termination, another employee had simply taken on Ms. Benton's duties in addition to her own. Our jurisdiction is under 28 U.S.C. § 1291. Because we agree with the district court that no reasonable jury could have found the required causal link between her speech and her termination, we affirm.

I.

This court reviews a district court's decision to grant summary judgment de novo, using the same legal standard applicable in the district court. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In making this determination, this court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Mere allegations, however, are insufficient to survive a motion for summary judgment. In cases involving the First Amendment, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression.

*Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1276 (10th Cir. 2007) (quotations and citations omitted).

II.

Ms. Benton alleged that she was terminated by Mr. LeFebvre on July 22, 2004, for exercising her right to free speech on three occasions, (1) when she testified to a grand jury in August 2003 in support of allegations of misconduct against Mr. LeFebvre's predecessor in office; (2) in June 2004 when she spoke to a man she described as her "liaison to the press" about hearing another Treasurer's Office employee threatening to shoot a tax payer; and (3) when, in February of 2004, she refused a request by Mr. LeFebvre that she testify before the Colorado General Assembly regarding a bill that he supported.

> In determining whether a public employer impermissibly retaliated against a public employee in violation of her First Amendment rights, this court applies the four-part test derived from *Pickering* [*v. Bd. of Educ.*, 391 U.S. 563 (1968)] and *Connick v. Myers*, 461 U.S. 138 (1983).
>
> First, this court must determine whether the employee's speech involves a matter of public concern. Second, if this threshold requirement is satisfied, this court then balances the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the employee's interest outweighs that of the government, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the employee shows the protected speech was a substantial factor, the burden shifts to the employer to show it would have taken the same action against the employee even in the absence of the protected speech. The first two steps of this analysis are questions of law to be resolved by the court, while the third and fourth steps are questions of fact for the jury.

*Id*. (quotations and citations omitted).

The district court granted summary judgment as to the first two claimed incidents of protected speech on the grounds that (1) the evidence clearly showed that Mr. LeFebvre supported her grand jury testimony against Mr. LeFebvre's predecessor, who was a political opponent of his and not an ally, and (2) there was no evidence that Mr. LeFebvre had any knowledge that Ms. Benton had spoken to anyone regarding the alleged threat to a tax payer. Ms. Benton does not appeal these determinations.

Instead, she argues that the district court erred in regard to its ruling on her claim that her firing was in retaliation for her refusal to speak to the General Assembly. The district court noted that it appeared that Ms. Benton refused to testify sometime in February 2004, approximately five months before her position was terminated. Ms. Benton does not dispute this finding on appeal. The court held that with that five-month lapse, the termination was not so close in time to her refusal to testify that a reasonable fact-finder could infer that the failure to testify played a substantial part in the decision to fire her without other evidence. The court recognized that Ms. Benton had also testified that Mr. LeFebvre had been hostile to her after her refusal to testify but noted that the only specific example Ms. Benton had given to evidence this hostility was the fact that she had only received a four-percent cost-of-living pay increase in April 2004 as opposed to a six-percent merit pay increase in 2003. The court held that, like the

termination, it was only speculation that her failure to testify had anything to do with her not receiving a "merit increase" in 2004.

Finally, the district court noted that Ms. Benton had presented some evidence that a year before she was fired on the ground that her position was being eliminated, Mr. LeFebvre had fired three employees who had been supporters of his predecessor for the same reason. Ms. Benton testified that she was personally aware that the firings were actually political in nature. The district court held that "even assuming plaintiff has presented evidence that LeFebvre had a plan to eliminate positions of politically disloyal employees, there is simply no evidence either that plaintiff fell into that category or that LeFebvre had any reason to believe that was the case." Aplt. App. at 591 (quotation omitted).

### III.

On appeal, Ms. Benton makes three arguments. First, she argues that the district court ignored other evidence of hostility from which a reasonable factfinder could have inferred causation. Second, she argues that the district court ignored other evidence showing the pretextual nature of Mr. LeFebvre's proffered non-discriminatory reason for her termination. Finally, she argues that the district court erred in granting summary judgment on arguments that were never made.

A.

In her first point on appeal, Ms. Benton argues that the district court erred

in determining that she did not produce enough evidence at step three of her

prima facie case to survive summary judgment.

> What constitutes a substantial motivating factor [at step three] evades
> precise definition. An employee need not prove his speech was the
> sole reason for defendants' action. Nor is the employee required to
> show "but-for" causation; that is, to demonstrate but-for the
> employee's speech the subsequent employment action would not
> have occurred. Rather, the employee must show the protected speech
> *played a substantial part* in the employer's decision to adversely
> alter the employee's conditions of employment.
>
> To withstand summary judgment at step three, therefore, an
> employee must produce evidence linking the employer's action to the
> employee's speech. Speculation or hunches amidst rumor and
> innuendo will not suffice. Nor can a plaintiff sustain his burden at
> step three simply by showing that the elimination of the protected
> activity may have been welcomed by the defendants.

*Maestas v. Segura*, 416 F.3d 1182, 1188-89 (10th Cir. 2005) (quotations,

citations, alterations, and footnotes omitted). As to what evidence would suffice

in regard to a plaintiff's burden at step three, we held in *Maestas* that

> An employer's knowledge of the protected speech, together with
> *close* temporal proximity between the speech and challenged action,
> may be sufficiently probative of causation to withstand summary
> judgment. Other evidence of causation may include evidence the
> employer expressed opposition to the employee's speech, or evidence
> the speech implicated the employer in serious misconduct or
> wrongdoing. On the other hand, evidence such as a long delay
> between the employee's speech and challenged conduct, or evidence
> of intervening events, tend to undermine any inference of retaliatory
> motive and weaken the causal link.

*Id*. at 1189.

Here, the record shows that Mr. LeFebvre asked Ms. Benton to testify before the Colorado General Assembly regarding a bill he supported that, among other things, would have made it illegal for Adams County to operate oil wells seized by the county.  Mr. LeFebvre wanted Ms. Benton to testify at least in part because her husband had been killed in an oil accident.  She testified that she felt pressured to testify, that he had given her a prepared statement, but that she felt the subject was private so she refused to testify.[1]  Even without Ms. Benton's testimony, the bill was passed.

The district court found that Ms. Benton informed Mr. LeFebvre that she would not testify sometime in February 2004, approximately five months before she was fired.  The district court held that considering the five-month lapse, Ms. Benton had not shown the close temporal proximity necessary to survive summary judgment without further evidence.  *See Maestas*, 416 F.3d at 1189. The court found that Ms. Benton had alleged that Mr. LeFebvre had been hostile

---

[1]     Defendants presented the hand-written notes that Mr. LeFebvre prepared for Ms. Benton to read.  It appears that one of the arguments presented by proponents of the bill was to be that counties could potentially be liable for injuries to workers operating the wells.  The notes, which are seven sentences long, have Ms. Benton testifying to her husband's death "servicing oil & gas wells," asking the Assembly to consider the possible liability to a county if her husband's death had occurred while the county owned the well, and urging it to stop allowing counties to continue to run businesses they had seized due to delinquent taxes.  Aplt. App. at 290-91.  Ms. Benton testified that she didn't want to give the testimony because the matter was private, her husband was killed doing oil well exploration and not servicing, and he was privately insured so even if he had been working on a county-owned well there would have been no county liability.

to her following her refusal to testify but that the only evidence of hostility she had presented was the fact that she had received only a four-percent cost-of-living raise in April 2004, instead of the six-percent merit raise she had received in 2003. While this might show that Mr. LeFebvre thought less of her performance for that year than the year before, the court found that it was pure speculation that it had anything to do with her refusal to testify two months before. For reasons explained *infra*, we agree with that conclusion.

On appeal, Ms. Benton argues that the district court ignored other evidence of hostility that she had presented and that the denial of a merit increase was actually part of a pattern of retaliation that began right after she refused to testify. Ms. Benton cites to our opinion in *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996), to support her claim. In that Fair Labor Standards Act retaliation case, the employee presented evidence that the month after he asserted his statutory right to proper overtime pay by filing a class-action lawsuit, his employer began citing him for performance deficiencies, resulting in a showing in the record of "numerous handwritten entries detailing plaintiff's omissions in stocking and pricing [the employer's] merchandise" over the next two months. *Id*. at 326. Then, a month later, he was demoted and transferred to a different store based on a complaint by a co-worker that he had harassed her regarding a survey regarding the over-time pay issue. The employee then filed a discrimination lawsuit. Discovery revealed numerous instances of prevarication

on the part of the employee, and the employer then fired him on the basis of these lies.

Although we noted "that protected conduct closely followed by adverse action may justify an inference of retaliatory motive," and that "we ha[d] rejected attempts to unduly stretch the 'close temporal proximity' required under this standard," we held "that the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the FLSA complaint and only culminates later in actual discharge." *Id*. at 329. We therefore determined that summary judgment was not proper in that case.

Ms. Benton argues that in addition to not getting a merit increase there was evidence of just such a pattern of retaliatory conduct that was ignored by the district court. We agree with defendants that Ms. Benton failed to present sufficient evidence linking her termination with her refusal to speak to the General Assembly.

Ms. Benton testified that Mr. LeFebvre "hung up the phone–basically slammed down the phone" when she informed him that she was not going to testify.[2] Aplt. App. at 248. She also testified that after she refused to speak before the Assembly her office environment changed in that Mr. LeFebvre would

---

[2] What Ms. Benton meant by this testimony is a bit unclear in that she later testified that Mr. LeFebvre was on his cell phone in his car driving to pick her up when she informed him that she was not going to testify. When questioned further she testified that she heard a "bang," but also that he seemed "very short" with her. Aplt. App. at 251.

not say good morning to her when he came in the office and that, when she had suggestions about how to change the "wrongdoing" in the office, he would take notes but would not act on those suggestions. But this conduct does not rise to the level of conduct we considered in *Marx*. If Mr. LeFebvre was so angry about her refusal to give that testimony that he no longer would say hello to her in the morning, why give her any raise at all two months later? Ms. Benton did not present evidence showing that her performance had not declined, nor did she present evidence that other employees received merit raises for that year. Nor did Ms. Benton's evidence tend to show why Mr. LeFebvre would wait five months to get rid of her position if he harbored such hostility toward her. As to Ms. LeFebvre's alleged refusal to act on her suggestions to change the "wrongdoing" in the office, Ms. Benson's evidentiary presentation was similarly deficient. For example, she did not show that Mr. LeFebvre previously had acted on her suggestions, or that he treated her suggestions differently than other employees.

Also, the content of the remarks Mr. LeFebvre prepared for Ms. Benton further undercuts any reasonable inference of retaliation. Her testimony was clearly intended to put a human face on the argument of the bill's proponents that counties open themselves up to potential liability when operating seized businesses. Ms. Benton refused to provide this testimony, in part, because it did not accurately describe the particular factual situation surrounding her husband's

death. But it seems hard to believe that the planned testimony, which would have taken less than a minute to deliver, or Ms. Benton's refusal to deliver that testimony, would have had a significant impact on the General Assembly's deliberations or been an impetus for retaliation, especially since the bill was passed anyway.

In short, this evidence is simply too speculative to allow a reasonable jury to find that there was a five-month pattern of retaliatory conduct and that her failure to testify was a substantial motivating factor in her position being terminated.

B.

In her second point, Ms. Benton argues, citing to our opinion in *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1455 (10th Cir. 1997), that the district court erred in granting summary judgment because she presented sufficient evidence for a reasonable jury to have found that Mr. LeFebvre's asserted reason for firing her was pretextual and that this finding alone could serve as sufficient reason for a reasonable jury to have found that her refusal to speak to the General Assembly was a substantial factor or a motivating factor in her termination. In other words, Ms. Benton argues that she can satisfy the third step of her prima facie First Amendment retaliation case solely by showing that a proffered non-retaliatory reason for her termination was pretextual.

First, Ms. Benton has misread our ruling in *Mason*. In that case, we noted that Mr. Mason had presented sufficient evidence that he had been fired for his political views or associations to warrant submission of his § 1983 claim to the jury. In other words he had made his prima facie case. We held that "[o]nce Mason presented such evidence, a finding of pretext is simply inferential evidence of discriminatory animus that may aid the jury in answering the ultimate question: Did political patronage . . . motivate the employment decision?" *Id.* Here, Ms. Benton is arguing that a pretext showing can help make her prima facie case.

Further, it is undisputed that after her termination, Ms. Benton's position was eliminated and her duties were taken on by another employee. The termination letter stated that her position was "no longer necessary to this organization." *See* Aplt. App. at 141. When questioned about his decision, Mr. LeFebvre testified that Ms. Benton's position "was taking less than 2 hours worth of time per day to complete" and was thereafter combined with another employee's position that also did not entail a full day's worth of work. *Id.* at 138.

Ms. Benton countered the assertion that her job took ten hours a week to complete by filing an affidavit that it took a full forty hours a week, noting that her termination letter did not specify that her job only took ten hours a week to complete, and noting that she received a "merit raise" for the first year Mr. LeFebvre was Treasurer. But while these arguments contradict Mr. LeFebvre's assertion as to how much time her job took, they do not

-12-

contradict the evidence that her position was unnecessary in that it was subsequently combined with another employee's and not refilled.

C.

Ms. Benton's final point of error argues that the district court erred because its grant of summary judgment "was based on arguments that Defendants never made." Aplt. Opening Br. at 13. Generally, a district court cannot grant summary judgment to a defendant on an issue not presented in the defendant's motion for summary judgment without notice to the plaintiff. *Graham v. City of Okla. City*, 859 F.2d 142, 145 (10th Cir. 1988). But, "[i]f a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte." *Ward v. Utah*, 398 F.3d 1239, 1245-46 (10th Cir. 2005). In her brief, Ms. Benton claims that "[t]he district court's grant of summary judgment [was] based on factual arguments that Defendants did not make, and which Plaintiff had no notice were at issue." Aplt. Opening Br. at 13.

If Ms. Benton's argument is, generally, that defendants raised no argument as to the third element in her prima facie case: i.e., her burden to prove "that the speech was a substantial factor or a motivating factor in the detrimental employment decision," *Deschenie*, 473 F.3d at 1276 (quotation omitted), this is clearly not true. While, defendants failed to cite to relevant case law regarding this factor in their summary judgment brief, much of their argument was centered around their contention that Ms. Benton could not show that she was fired in

-13-

retaliation for exercising her right to free speech, rather than because her position was unnecessary.

If her argument is, more specifically, that defendants did not address (1) the sub-issue of proving the third element of her prima facie case through the use of circumstantial evidence of temporal proximity, or (2) factual evidence of her not receiving a "merit increase" in 2004, she has not shown prejudice. Her response brief discussed both topics. *See* Aplt. App. at 151 (arguing that "[a]s a matter of law, a court can infer retaliation against . . . an employee when adverse employment action occurs within up to eight, or even eleven, months after an employee engages in protected activities"); *id.* at 153 (arguing that "[Mr. LeFebvre] was the person who terminated her only one month after she spoke out about wrongdoing in his office. He was the one who did not give her a merit raise in 2004 after she refused to testify before the General Assembly" (citation omitted)).

## IV.

The judgment of the district court is AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge