**Billy RAYMOND, Plaintiff,**

v.

**ALBERTSON'S INC., Defendant.**

**No. CV–S–97–00659–JBR(LRL).**

United States District Court,
D. Nevada.

March 17, 1999.

Daniel Marks, Keith M. Lyons, Jr., Las Vegas, Nevada, for plaintiff.

Neil Alexander, Patrick Hicks, Las Vegas, Nevada, for defendant.

### ORDER

RAWLINSON, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment and/or Summary Adjudication (# 13) and Plaintiff's Motion for Summary Judgment (# 17). Plaintiff filed an Opposition to Defendant's Motion (# 22),[1] and Defendant filed a Reply (# 26). Defendant filed an Opposition to Plaintiff's Motion (# 18), and Plaintiff filed a Reply (# 23). A hearing was held on March 12, 1999.

### Background

Prior to his termination, Plaintiff Billy Raymond ("Raymond") was employed at one of Defendant Albertson's Inc.'s ("Albertson's") Las Vegas supermarkets as a night crew stocker. Raymond began working for Albertson's in October 1993. By late 1994, Raymond's attendance problems had begun.[2] Raymond was disciplined on several occasions for being tardy or calling in sick with little or no notice. On one occasion, Raymond told his supervisor he was unable to come to work due to a car jacking, a statement he later admitted was untrue.

A major reason Raymond was missing work was due to his use of crystal methamphetamine, cocaine, and alcohol. Albertson's assisted Raymond in getting admitted to a drug treatment program. Raymond remained in the inpatient detoxification center from October 3, 1995 until October 9, 1995. Raymond was on approved leave while in the detoxification center.

Following his release from the detoxification center, Raymond's attendance problems continued. Raymond went to work on October 9, 1995, the day he was released. He was not scheduled to work on October 10–11, 1995. On October 12–15, 1995, Raymond called in sick. Raymond worked on October 16, 1995. Raymond was not scheduled to work on October 17, and called in sick on October 18. October 19 was a scheduled day off. However, Raymond called in sick on October 20–22. Raymond worked on October 23, 1995. On October 24, Raymond called in and said he would be late. Raymond called back later to say he would not be coming in. Raymond called in on October 24 and stated that he had to take his girlfriend to the doctor.

On October 26, 1995, Raymond came in to talk with his supervisor regarding his attendance. Although Raymond had promised to be at work on time, when his shift began that night, he called in and stated that he had fallen and possibly broken his ankle. At his supervisor's request, Raymond brought in a doctor's note on October 28, 1995, covering his absence from October 26–28. The note did not specifically refer to the ankle injury. Raymond again promised to report for duty when his shift began later that evening but called in sick at the start of the shift.

On October 30, 1995, Raymond was suspended for five days for failure to work scheduled shifts. When Raymond was suspended, his supervisor asked Raymond to bring a note from the doctor regarding the days off that he missed.

Raymond provided a note from Dr. Levy stating that Raymond had been under Dr. Levy's care "from 10/16/95 to current time" [November 2, 1995]. The note advised that Raymond was "unable to work

---

1. Although Plaintiff did not file his opposition within the allotted time, he filed a Motion for Extension of Time to Respond (# 17A) in accordance with Rule 6(b) of the Federal Rules of Civil Procedure and Local Rule 6–1 of the Local Rules of Practice.

2. The factual background is based upon facts which are agreed upon or which have not been contested as required by Rule 56 of the Federal Rules of Civil Procedure.

until 10/30/95," even though Raymond had in fact worked during the period prior to his suspension.

November 5, 1995 was the last day of Raymond's suspension. On November 6, 1995, Raymond's supervisor had Raymond to sign a last chance agreement advising Raymond that failure to meet, among other things, attendance requirements would subject Raymond to immediate discharge.

Raymond was supposed to report to work at 11:00 p.m. on November 6, 1995, the day he signed his last chance agreement. Instead, he called and informed his employer that he was not coming to work because his daughter was sick.

Raymond was fired by Albertson's on November 7, 1995 for excessive absences and failure to work his scheduled shift.

Following his termination, Raymond filed a Family Medical Leave Act ("FMLA") Complaint with the Department of Labor (DOL). After conducting its investigation, the DOL concluded that Raymond's termination violated the FMLA. The DOL found that the last chance agreement was a *"per se* violation of his [Raymond's] FMLA rights in that it precluded him from using them at future times, and penalizes him for having invoked his FMLA rights on a prior occasion." The DOL investigator was of the view that "Albertson's had made a decision to terminate Raymond upon his entrance into the [drug] treatment program, and simply used the last chance agreement as an excuse to do so."

This Court must now decide if a material question of fact has been raised regarding whether Raymond's termination was a retaliation in violation of the FMLA.[3]

### Discussion

The Court has before it Albertson's and Raymond's Motions for Summary Judgment.

Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; FED.R.CIV.P. 56(e). The nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; FED.R.CIV.P. 56(e).

■ In order for a party to establish a prima facie claim for retaliation in violation of the FMLA, he must establish:

---

**3.** The FMLA provides in part:
 (a) Interference with rights
  (1) Exercise of rights
   It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
 29 U.S.C. § 2615(a)(1).

1. That he engaged in activity protected under the FMLA;

2. That he subsequently suffered adverse action by the employer; and

3. That a causal connection existed between the employee's activity and the adverse action.

*Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–209 (10th Cir.1997).

For purposes of this motion, Albertson's conceded that Raymond engaged in activity protected by the FMLA when he underwent drug dependency treatment in the detoxification center from October 3–9, 1995. Raymond suffered adverse action by the employer when he was terminated following his stay in the detoxification center. Finally, construing the facts in the light most favorable to Raymond and considering the short period of time between the FMLA-protected activity and Raymond's termination, a reasonable inference could be made that a causal connection exists between Raymond's FMLA activity and his termination.

The framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) guides further analysis of Raymond's retaliation claim. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). Accordingly, once the employee has established a prima facie case, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for its employment decision. Once the employer meets its burden, the employee must show that a material issue of fact exists regarding whether the employer's proffered reason for the challenged action is a pretext. *Id.*

■ Pretext may be established by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffer. *Id.*

Like the employer in *Hilti*, Albertson's has explained its action by stating that Raymond's unscheduled absenteeism violated Albertson's policies and was detrimental to its operations.

■ Like the employee in *Hilti*, Raymond does not contest the accuracy of Albertson's record of his absenteeism, the reasons given for his absences, or deny that he was specifically warned about the possible consequences of continued attendance problems in violation of Albertson's established policies. Instead, Raymond asserts that because his attendance problems were due to "depression and withdrawal" related to his drug treatment program, they could not properly form the basis of a termination.

In support of his position, Raymond references the note from Dr. Levy, which stated that Raymond had been under Dr. Levy's care during the period when Raymond's post-treatment absences occurred. However, in his deposition Dr. Levy could not state why Raymond was unable to work during the referenced period. He wrote the note at Raymond's request, and testified that he would not have written the note if he had known that Raymond worked during the period referenced in the note. When examined in the face of his deposition testimony, Dr. Levy's note does not raise a material question of fact regarding Albertson's proffered reasons for Raymond's termination. His conclusion was not supported by a professional assessment of the limitations actually required by Raymond's condition. *See, e.g., Olsen v. Ohio Edison Co.*, 979 F.Supp. 1159, 1165 (N.D.Ohio 1997).

■ Raymond has not shown that similarly-situated employees who were not engaged in FMLA activity were treated differently with regard to Albertson's attendance policy. Consequently, no genuine issue of fact has been raised about the sincerity of Albertson's concern with Raymond's excessive absenteeism. *See Hilti*, 108 F.3d at 1324.[4]

---

4. Raymond also cites the DOL determination as a basis for a finding of retaliation in violation of the FMLA. However, this court is not bound by the DOL's administration determi-

Raymond also contends that his termination violated the FMLA because the final absence which resulted in his termination was covered under the FMLA. Raymond asserts that he was absent from work due to the illness of his infant daughter.

The Court was initially persuaded that the daughter's illness constituted a "serious health condition" under the FMLA. However, upon further reflection, the Court has determined that the daughter's illness did not meet the definition of serious health condition under the FMLA.

It is undisputed that Raymond's daughter was suffering from stomach flu. 29 C.F.R. § 825.114(c) provides:

> ... Ordinarily, unless complications arise, the common cold, the flu ... are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave ...

29 C.F.R. § 825.114(c).

The treating physician, Dr. Schnitzler, testified in his deposition that Raymond's daughter had normal vital signs and was not dehydrated. The parents were told to give her fluids, including Pedialyte, an electrolyte maintenance solution available over-the-counter. PHYSICIAN'S DESK REFERENCE 2736 (53rd ed.1999).

The regulations interpreting the FMLA treat use of over-the-counter medications as an indication of a less serious malady. 29 C.F.R. § 825.114(b). When coupled with the fact that Dr. Schnitzler declined to testify as an expert on Raymond's behalf, this Court is of the view that Raymond has failed to raise a material question of fact that his daughter's flu was accompanied by complications which would take it outside the provisions of 29 C.F.R. § 825.114(c).

This Court finds the reasoning set forth in *Morgan v. Hilti, Inc.*, 108 F.3d 1319,

nation. *See, e.g., O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir.1988). This is especially true where the DOL investi-

persuasive. Raymond has failed to raise a material question of fact regarding whether his termination for excessive absenteeism violated the FMLA. Accordingly, summary judgment on behalf of Albertson's is proper.

THEREFORE, IT IS **ORDERED** that Defendant Albertson's, Inc.'s Motion for Summary Judgment (# 13) is GRANTED.

IT IS FURTHER **ORDERED** that Plaintiff Billy Raymond's Motion for Summary Judgment (# 17) is DENIED.

The Clerk shall enter judgment accordingly.

gator relied so heavily on the unsubstantiated note from Dr. Levy.