Charles SCHINDLER, Plaintiff,

v.

BIERWIRTH CHRYSLER/PLYMOUTH, INC., Defendant.

No. 97–2296–JWL.

United States District Court,
D. Kansas.

July 6, 1998.

Lee J. Hollis, Prairie Village, KS, for Plaintiff.

Joel P. Brous, Shughart, Thomson & Kilroy, P.C., Karen R. Glickstein, James C. Cox, Foland & Wickens, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Charles Schindler filed suit against defendant Bierwirth Chrysler/Plymouth, Inc. alleging that defendant terminated his employment in violation of the Age Discrimination in Employment Act (ADEA) and the Kansas Age Discrimination in Employment Act (KADEA). This matter is presently before the court on defendant's motion for summary judgment (Doc. # 52). For the reasons set forth below, defendant's motion is denied.

## I. Facts [1]

Defendant Bierwirth Chrysler/Plymouth is an automobile dealership owned by three brothers—David, Steve and Andy Bierwirth. David Bierwirth is the majority shareholder and President of Bierwirth Chrysler/Plymouth. Plaintiff Charles Schindler began his employment with Bierwirth Chrysler/Plymouth in November 1993 when David Bierwirth hired him as the Finance & Insurance Manager. In this position, plaintiff was responsible for financing and for selling various financial and service products including credit life, accident and health policies, service contracts and various chemical treatments. Plaintiff also had responsibility for certain paperwork in connection with the retail leasing operation. Plaintiff was forty-nine years old at the time he was hired.

The first three years of plaintiff's employment passed without incident. In fact, plaintiff considered David Bierwirth a "good, personal friend" and did not believe that any of the Bierwirth brothers treated him differently because of his age. Although plaintiff recalls David Bierwirth referring to him as an "old fuck" on at least ten occasions, he concedes that these comments were made in a joking manner and he never believed his job was in jeopardy when he heard these comments. Plaintiff also recalls Andy Bierwirth making age-related comments on occasion, although he concedes that these comments were similarly made in a joking fashion and he "imagines" that he "joked back" with Andy Bierwirth.

In September 1996, after a period away from the dealership, Steve Bierwirth returned to work for the dealership. Although Steve Bierwirth did not have a job title, he was responsible for a variety of different projects at Bierwirth Chrysler/Plymouth, including an examination of "all of the changes" that needed to be made at the dealership. David, Steve and Andy Bier-

---

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

wirth had daily meetings during which they discussed management issues, including issues with respect to employees. The three brothers had many conversations about plaintiff's job status. According to Steve Bierwirth, he advised David Bierwirth in October or November of 1996 that, in his opinion, plaintiff needed to be replaced because of his performance and attitude.

During this same time frame, plaintiff heard Steve Bierwirth state that Bob Frye, a fifty-four-year-old sales manager, had been at the dealership for a period of time and that "a man in his position after so long a time got complacent, stagnant [and] needed to be replaced by younger, more enthusiastic people." During the same conversation, Steve Bierwirth told plaintiff that, in essence, he wanted to get rid of Mr. Frye and that he thought "the guys had been there too long" and he "wanted a fresh, new look." [2]

On February 1, 1997, David Bierwirth terminated plaintiff's employment. [3] At the time of plaintiff's discharge, David Bierwirth explained that he wanted to change the image of the dealership from a "mom and pop" store. Plaintiff was fifty-two years old at the time of his discharge and was replaced by a twenty-eight year-old male.

Shortly after plaintiff's termination, David Bierwirth allegedly told Charles Slapper, defendant's Used Car Manager, that "he would like to have some younger people at the dealership." Moreover, Steve Bierwirth allegedly told Slapper, shortly after plaintiff's discharge, that he "wanted to get a younger manager and salesmen and put some more pizzaz back into the place . . . that there were too many old men who were too old and too lazy and [the dealership] needed young, aggressive people."

**2.** Bob Frye was terminated in April 1997—two months after plaintiff's discharge.

**3.** David Bierwirth testified that the other shareholders "had to be a part" of the termination decision. Similarly, Andy Bierwirth testified that although the "final say" with respect to the termination decision was David's, it was "absolutely" a group decision.

## II.  Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548(quoting Fed.R.Civ.P. 1).

## III.  Discussion

Plaintiff contends that defendant's decision to terminate his employment violated the Age Discrimination in Employment Act (ADEA) and the Kansas Age Discrimination in Employment Act (KADEA). [4] The

**4.** Because age discrimination claims under the KADEA are evaluated under the same criteria used to evaluate ADEA claims, the court will analyze the two claims concurrently. *See Veale v. Sprint Corp.*, No. 95–2379–GTV, 1997 WL 49114, at *5 n. 2 (D.Kan. Feb.3, 1997) (citing *Kansas State Univ. v. Kansas Comm'n on Civil Rights*, 14 Kan.App.2d 428, 796 P.2d 1046 (1990)).

court analyzes plaintiff's claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir. 1996). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See id.* Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (quoting *Randle*, 69 F.3d at 451). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.* (quoting *Randle*, 69 F.3d at 452 n. 17).

■ To establish a prima facie case of age discrimination, plaintiff must demonstrate that (1) he was a member of the protected age group at the time of the discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person. *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1312 (10th Cir.1998) (citing *Gonzagowski v. Widnall*, 115 F.3d 744, 749 (10th Cir.1997)). For purposes of its motion, defendant concedes that plaintiff has adequately established his prima facie case. Moreover, defendant has set forth legitimate, nondiscriminatory reasons for its decision to terminate plaintiff's employment—plaintiff's poor performance and attitude. As set forth below, however, plaintiff has come forward with sufficient evidence that defendant's proffered reasons are pretextual.[5]

First, plaintiff has cast sufficient doubt on defendant's assertion that plaintiff was terminated, at least in part, because of his poor attitude. In his deposition, David Bierwirth stated that several employees had complained about plaintiff's attitude, including Bob Frye, Mark Clardy, Jim Worrell and Jan Nanoski.[6] Each of these employees, however, submitted affidavits stating that they did not complain about plaintiff's attitude and, in fact, did not have any difficulty working with plaintiff.[7] Such circumstances are sufficient to raise an inference of pretext. *See Corneveaux v. Cuna Mutual Ins. Group*, 76 F.3d 1498, 1503 (10th Cir.1996) (ADEA plaintiff produced sufficient evidence of pretext where defendant alleged that plaintiff had personality conflicts with different people, including the "current manager of a very large credit union," but the manager testified he did not remember the alleged incident and had not had any particular problems with plaintiff).

With respect to plaintiff's performance, defendant argues that plaintiff's performance declined significantly throughout 1996 and early 1997. Specifically, defendant claims that plaintiff sold less than $1000 per month of credit life, accident and health insurance throughout most of 1996 and none at all in January 1997. Plaintiff, however, averred that he had never been advised that his performance was unsatisfactory. In fact, according to plaintiff, David Bierwirth told him

---

5. According to defendant, no reasonable jury could find that defendant's legitimate nondiscriminatory reasons were pretextual in light of the fact that Bierwirth Chrysler/Plymouth continued to hire and retain employees within the protected class. Although such evidence may be admissible at trial, the mere fact that defendant continued to hire and retain other employees within the protected class does not preclude a finding that Bierwirth Chrysler/Plymouth intentionally discriminated against plaintiff on the basis of his age, particularly in light of plaintiff's pretext evidence and other evidence, set forth in more detail in this opinion, that age may have been a determinative factor in defendant's decision to terminate plaintiff's employment.

6. David Bierwirth stated that Nanoski "was the biggest" complainer about plaintiff's attitude. Curiously, Nanoski resigned his employment almost two years prior to plaintiff's discharge.

7. Defendant characterizes these affidavits as "suspect" because they were signed under penalty of perjury rather than notarized. As plaintiff aptly points out in his motion for leave to file a surreply (doc. # 64), however, which motion the court grants, declarations under penalty of perjury are specifically authorized by both the local rules of this court, D. Kan. Rule 56.1, and by statute, 28 U.S.C. § 1746.

**1058**

in December 1996 that he was doing a "great job" and could expect a bonus in the spring. In such circumstances, a reasonable jury could believe that defendant's proffered reason for plaintiff's discharge was pretextual.

Finally, at the time of plaintiff's discharge, according to plaintiff, David Bierwirth explained that the decision to terminate plaintiff's employment was based on Bierwirth's desire to change the image of the store from a "mom and pop" image. During his deposition, however, David Bierwirth asserted that the decision to terminate plaintiff's employment was based on plaintiff's poor performance and bad attitude. The court agrees with plaintiff that the change in defendant's stated reasons for terminating plaintiff's employment, coupled with plaintiff's other pretext evidence, adds force to plaintiff's pretext argument. *See Randle v. City of Aurora,* 69 F.3d 441, 455 (10th Cir.1995) ("shifting of explanations" offered by defendant with respect to rationale underlying wage differential strengthens plaintiff's pretext argument).

According to defendant, plaintiff cannot meet his pretext burden because the same individual hired and fired plaintiff within in a short time frame. Several courts, including this one, have recognized that "when 'the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring,' there is a strong inference that discrimination was not a motivating factor in the employment action taken." *McKinsey v. Sentry Ins.,* No. 90–2387–Z, 1992 WL 101686, at *4 (D.Kan. Apr.23, 1992) (quoting *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991)), *aff'd,* 986 F.2d 401 (10th Cir.1993). The court, however, is unwilling to apply this narrow principle in this case. Although it is uncontroverted that David Bierwirth made the decision to hire plaintiff in November 1993, it is not at all clear that David Bierwirth was the "sole decisionmaker" in the decision to termi-

nate plaintiff's employment. In fact, Steve Bierwirth advised David Bierwirth to discharge plaintiff and discussed the termination decision with David Bierwirth at some length. Moreover, Andy Bierwirth testified that the termination decision was "absolutely" a group decision, although David Bierwirth had the "final say." Even David Bierwirth conceded that all shareholders "had to be a part" of the termination decision. Thus, the "same actor" inference is inapplicable in this context. *See O'Bryan v. KTIV Television,* 64 F.3d 1188, 1192–93 (8th Cir.1995) (refusing to apply "same actor" inference where individual who hired plaintiff was not the only person responsible for plaintiff's termination—two other individuals "played important roles in that decisionmaking process"). Even if David Bierwirth were the sole decisionmaker involved in the termination decision, the court does not agree with defendant, in light of other evidence presented by plaintiff, that this fact renders plaintiff's age discrimination claim "simply incredible." *See Eslinger v. U.S. Central Credit Union,* 866 F.Supp. 491, 498–99 (D.Kan.1994) (refusing to apply "same actor" inference in light of other evidence presented).

In addition to showing that defendant's proffered explanations could be pretextual, plaintiff has introduced evidence suggesting that age may have been a determinative factor in defendant's decision to terminate his employment.[8] A few months prior to his discharge, plaintiff heard Steve Bierwirth state that Bob Frye had been at the dealership for a period of time and that "a man in his position after so long a time got complacent, stagnant [and] needed to be replaced by younger, more enthusiastic people."[9] During the same conversation, Steve Bierwirth told plaintiff that he wanted to get rid of Mr. Frye and that he thought "the guys had been there too long" and he "wanted a fresh, new look." Although these com-

8. Although David Bierwirth's "old fuck" references may be relevant in connection with the overall atmosphere at Bierwirth Chrysler/Plymouth, the court has not considered these comments in its pretext analysis in light of plaintiff's concession that such references were made in a joking manner.

9. Defendant vigorously contends that Steve Bierwirth's statement is merely a "stray remark"

and, as such, is insufficient to raise an inference of pretext. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526 (10th Cir.1994) (stray remarks, unrelated to the challenged action, are insufficient to create a jury issue in an ADEA case). The court rejects defendant's characterization of this statement. First, Steve Bierwirth played a role in the decisionmaking process. Although David Bierwirth may have had the "final authority" to terminate plain-

ments were not directed toward plaintiff, a reasonable jury could infer, in light of Steve Bierwirth's involvement in the decision to terminate plaintiff's employment, that similar beliefs motivated Steve Bierwirth's opinion that plaintiff needed to be replaced. This is particularly true in light of the close proximity of these comments to the termination decision.

In addition, shortly after plaintiff's discharge, David Bierwirth allegedly told Charles Slapper, defendant's Used Car Manager, that "he would like to have some younger people at the dealership." Shortly after that, according to Slapper, Steve Bierwirth told him that "he wanted to get a younger manager and salesmen and put some more pizzaz back into the place ... that there were too many old men who were too old and too lazy and [the dealership] needed young, aggressive people."[10] Although these comments may not have been directed toward plaintiff, a reasonable jury could infer, in light of David and Steve Bierwirth's involvement in the decision to terminate plaintiff's employment, that age was a determinative factor in the decision to terminate plaintiff's employment. Again, this is particularly true in light of the close proximity of these comments to the termination decision.

Finally, defendant discharged two other older managers, Bob Frye (fifty-four years old) and Mark Clardy (forty-three years old), within months of plaintiff's discharge. These subsequent discharge decisions, within a few months of plaintiff's discharge and coupled with the statements of David and Steve Bierwirth, also lend support for plaintiff's pretext argument. *See Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 560–61 (10th Cir.1996) (evidence of a pattern of dismissals of older employees, while not conclusive, raises a justiciable issue of material fact which must proceed to trial). *See also Bingman v. Natkin & Co.,* 937 F.2d 553, 556–57 (10th Cir. 1991) (trial court did not err in admitting evidence that two 60–year–old employees were laid off about a year after the 60–year–old plaintiff was dismissed because "evidence not too remote in time that defendant terminated others in the 60–year–old age group would be entirely relevant to the question of defendant's policies and practices.").

In light of the foregoing, a reasonable jury could conclude that defendant's proffered reasons for terminating plaintiff's employment were pretextual and that age played a determinative role in the decisionmaking process. Accordingly, the court denies defendant's motion for summary judgment.[11]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (Doc. # 52) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's motion to file surreply (doc. # 64) is granted.

**IT IS SO ORDERED.**

tiff's employment, Steve Bierwirth advised David to discharge plaintiff as early as October 1996. Moreover, Andy Bierwirth testified that the termination decision was "absolutely" a group decision. Second, contrary to defendant's assertion, plaintiff's case is not "based on [this] single, isolated comment." As set forth in more detail in the court's opinion, plaintiff has come forward with evidence of pretext wholly unrelated to this comment as well as additional evidence that plaintiff's age may have been a determinative factor in defendant's decision.

10. Defendant contends that Steve Bierwirth's comment is irrelevant because he was not involved in the decision to terminate plaintiff's employment. For the reasons set forth in footnote 7 of this opinion, the court rejects this argument.

11. In the alternative, defendant moves for summary judgment on plaintiff's claim for liquidated damages because, according to defendant, there is no evidence that defendant acted with reckless disregard of the ADEA when it terminated plaintiff's employment. *See* 29 U.S.C. § 626(b) (liquidated damages available for willful violations of statute); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (a violation is "willful" if the employer knew or showed reckless disregard for whether its conduct was prohibited by the ADEA). In light of the evidence presented by plaintiff at this juncture, however, the court believes that such a ruling would be premature and is best left for consideration in connection with a timely Rule 50 motion. Thus, defendant's motion for summary judgment with respect to plaintiff's liquidated damages claim is denied.