Robert BRIMM, Plaintiff,

v.

**BUILDING ERECTION SERVICES COMPANY, INC., Defendant.**

No. CIV.A. 03–2187–KHV.

United States District Court, D. Kansas.

March 31, 2004.

Brett A. Davis, Davis Ketchmark Eischens & McCreight, P.C., Joseph K. Eischens, Thornberry & Eischens, LLC, Michael S. Ketchmark, Davis Ketchmark Eischens & McCreight, P.C., Kansas City, MO, for Plaintiff.

Joseph R. Colantuono, Katherine I. Tracy, Katherine A. Worthington, Colantuono & Associates LLC, Leawood, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Robert Brimm brings suit against Building Erection Services Company, Inc. ("BESCO"), alleging racial harassment and retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as amended, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* as amended. This matter comes before the Court on *Defendant's Motion For Partial Summary Judgment* (Doc. # 41) filed December 24, 2003, in which defendant seeks summary judgment on plaintiff's Title VII claims. For reasons stated below, the Court overrules defendant's motion.

### I. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.;

accord *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. Facts

The following facts are either uncontroverted or construed in a light most favorable to plaintiff.[1]

### A. Employment With BESCO In 2000

BESCO employed plaintiff, an African American man, from April 25 to October 26, 2000. During most of that time, plaintiff worked on something called the Eagle Project. Randy Brandenburg and Ron Jones, general foremen, supervised plaintiff. As general foremen, Brandenburg and Jones were responsible for enforcing BESCO's discrimination policy and preventing and correcting racial harassment in the work place.

Plaintiff's job required him to work next to Brandenburg. On the first day, plaintiff called Brandenburg "short." Brandenburg replied that if plaintiff called him "short," he would call plaintiff "nigger." Plaintiff stopped calling Brandenburg "short," but Brandenburg did not stop calling plaintiff "nigger." Every day, throughout the entire eight-hour shift,

---

1. The Court does not consider facts which defendant includes for the first time in its reply brief. *See, e.g., Oleson v. KMart Corp.,* 189 F.R.D. 636, 637 (D.Kan.1999) (unfair to non-movant for court to consider facts which appear for first time in reply brief). In addition, the Court does not consider facts which are not contained in the parties' statement of facts. *See* D. Kan. Rule 56.1.

Brandenburg called plaintiff racially derogative names such as "nigger," "coon," "dumb nigger," "stupid nigger," "jigaboo," "watermelon picker" and "spear-chucker."[2] Brandenburg told plaintiff that he did not like "niggers." Brandenburg repeatedly asked plaintiff to come to his house for "nigger night" and to bring his own rope. Brandenburg also told racially offensive jokes in front of plaintiff. For instance, Brandenburg told plaintiff that the reason his lips, hands and feet were white was because when God spray-painted him black, God had him lean forward and kiss the wall.

Plaintiff worked with Tommy Sawyer, Chris Hutton, David Turk and Dennis,[3] all of whom called him racial slurs on a daily basis. Dennis called plaintiff "boy" and said things like "come over here, boy," "hey, black ass" and "nigger." In front of plaintiff, Sawyer and Hutton referred to Brandenburg as "Branden-nigger." They told plaintiff that Brandenburg used to go out and beat up niggers for the hell of it.[4]

Brandenburg drew a racially offensive image which depicted three hooded figures in a circle. When plaintiff asked what the drawing was, Brandenburg replied that it was "the last thing a nigger sees when he's looking up from the bottom of the well." Brandenburg, Sawyer, Hutton and Dennis displayed the three-hooded image on their hard hats. Brandenburg also displayed the image on his boots, along with "KKK." The three-hooded image and "KKK" were also drawn on porta-potties at the job site, and somebody wrote "KKK" on plaintiff's welding hood.

Plaintiff was offended and degraded by the conduct of Brandenburg, Sawyer, Hutton, Turk and Dennis. Plaintiff repeatedly told them that he was offended by their conduct and asked them to stop. When plaintiff awoke in the mornings, he did not want to go to work. Plaintiff arrived at work hoping that the harassers would not be there, and he sometimes left work early to avoid confronting them. Sometimes plaintiff missed work because he could not face the racial hostility.

Several times, plaintiff complained to Jones and demanded that he do something to stop the offensive conduct. Within plaintiff's first month of work, Jones told Tonya Billington, BESCO's EEO officer and safety director, about racial harassment issues including that Brandenburg was using words like "nigger" and had "KKK" on his hard hat. When the conduct continued, Jones again notified Billington, who came out and talked to plaintiff more than once. Several times, plaintiff complained about the harassment directly to Billington. Plaintiff also complained to Dennis Castiglia, structural steel division superintendent.

On October 26, 2000, BESCO laid off plaintiff. The record does not reflect the reason for the lay-off or whether the parties expected plaintiff to resume employment with BESCO at some point in the future. Although the record is not clear, it appears that plaintiff may have belonged to a union and that a union contract may have required defendant to hire him. *See Memorandum In Support Of Defendant's*

---

**2.** Brandenburg admits that his nickname for plaintiff was "nigger." *Brandenburg Depo.* at 30:11–13, Exhibit B to *Plaintiff's Opposition To Defendant's Motion For Partial Summary Judgment ("Plaintiff's Opposition")* (Doc. # 47) filed January 30, 2004.

**3.** The record does not reflect Dennis's last name.

**4.** When plaintiff asked Brandenburg why he would do such a thing, Brandenburg replied, "Because I could. I don't like niggers." *Brimm Depo*, at 63:2–3, Exhibit E to *Plaintiff's Opposition.*

*Motion For Partial Summary Judgment* ("*Defendant's Memorandum*") (Doc. # 42) filed December 24, 2003 at ¶ 27 (BESCO called plaintiff at the union hall to return to work).

### B. Nine–Month Gap In Employment

For nine months, from October 26, 2000 to July 30, 2001, plaintiff did not work for BESCO. The record does not reflect whether plaintiff worked during this time. Plaintiff asserts that work was "kind of tight." *Plaintiff's Opposition* at ¶ 73.

### C. Employment With BESCO From July to October, 2001

Plaintiff returned to work for BESCO from July 30 to October 24, 2001. Before doing so, plaintiff talked about racial harassment issues with Jones, who promised that it would not happen again.

For about three months, until October 25, 2001, plaintiff worked as foreman on the Olathe High School Project. During the first month, plaintiff worked with Brandenburg, who was also a foreman. On plaintiff's first day of work, Brandenburg immediately asked Jones, "You're bringing this nigger back?" As at the Eagle Project, Brandenburg repeatedly directed racial slurs toward plaintiff. In addition, Brandenburg displayed the three-hooded image on his hard hat. On one occasion when plaintiff's wife came to the job site for lunch, Brandenburg asked, "What's that white girl dong with a nigger like you when she could have a nice white guy?"

During his last two months on the Olathe High School Project, plaintiff worked with David Turk, also a foreman. Turk called plaintiff racial slurs and treated him like a slave. Turk constantly ordered plaintiff around calling him "boy." In addition, Turk daily used racial slurs like "nigger," "coon" and "stupid nigger." On plaintiff's last day on the project, Turk initiated a physical altercation with plaintiff by running up and calling him "boy" and "nigger" while ordering him around and sticking a finger in his face.

Plaintiff repeatedly worked with Sawyer and Hutton on the Olathe High School Project. As at the Eagle project, Sawyer and Hutton called plaintiff racial slurs.

Plaintiff was offended and degraded by the conduct of Brandenburg, Sawyer, Hutton and Turk. Plaintiff repeatedly told them that he was offended by their racially offensive conduct and asked them to stop. When plaintiff awoke in the mornings, he did not want to go to work. Plaintiff arrived at work hoping that the harassers would not be there, and he sometimes left work early to avoid confronting them. Sometimes plaintiff missed work because he could not face the racial hostility.

Beginning the first week on the Olathe High School Project, plaintiff repeatedly complained to Jones about the racially offensive conduct. Plaintiff also complained several times to Billington. In late October of 2001, plaintiff complained that he did not want to work with Turk because Turk was racist. BESCO informed plaintiff that he would have to keep working with Turk because it did not have other work for plaintiff.

### D. Two–Week Gap In Employment

Plaintiff did not work for BESCO from October 25, 2001 to November 13, 2001. The record does not reflect whether he worked elsewhere during this period.

### E. Plaintiff's Employment With BESCO From November to December, 2001

For three weeks, from November 13, 2001 to December 4, 2001, BESCO employed plaintiff at the Holy Trinity Project. During this time, nobody harassed plaintiff because of race.

On December 4, 2001, Paul Allen, general foreman, informed plaintiff that BESCO was firing him because he did not have welding papers. Plaintiff's position did not require that he be a certified welder or have welding papers, and plaintiff was satisfactorily performing his job duties at the time. A few days earlier, plaintiff had exploded an M–80 firecracker at the Holy Trinity site. Other workers had also lit firecrackers on the job, and nobody reprimanded plaintiff for the conduct.

On February 12, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In response to an inquiry by the EEOC, defendant claimed that it fired plaintiff because: (1) he had a lot of absences and tardiness; (2) work was coming to an end; and (3) plaintiff lit a firecracker on the job site. In response to an interrogatory in this case, defendant gave the same reasons for firing plaintiff.

Allen and Castiglia decided to fire plaintiff. At his deposition, Allen admitted that the decision had nothing to do with absences or tardiness. *Allen Depo.* at 22:13–15, Exhibit I to *Plaintiff's Opposition.* Castiglia testified that the decision was based on the fact that plaintiff routinely left the job site early without picking up his tools. *Castiglia Depo.* at 79:7–18, Exhibit F to *Plaintiff's Opposition.* When Allen fired plaintiff, however, he did not say anything about firecrackers or failing to put tools away. In fact, plaintiff did not leave work without putting his tools away.

### III. Analysis

Plaintiff asserts claims under Section 1981 and Title VII. Specifically, plaintiff alleges that in 2000 and 2001 defendant subjected him to a racially hostile work environment and that in December of 2001 defendant fired him in retaliation for complaints of discrimination. Defendant seeks summary judgment on the Title VII claims, arguing that (1) plaintiff cannot assert a hostile work environment claim based on conduct which occurred in 2000; (2) the conduct which occurred in 2001 does not constitute a hostile work environment; and (3) plaintiff cannot establish retaliation.

### A. Hostile Work Environment Based On Conduct Which Occurred In 2000

Defendant asserts that any claim for hostile work environment in 2000 is barred because it occurred more than 300 days before plaintiff filed his EEOC charge. Section 2000e–5(e)(1) of Title VII required plaintiff to file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). Plaintiff filed his EEOC charge on February 12, 2002. Thus, pursuant to Section 2000e–5(e)(1), the charge was timely with respect to unlawful employment practices which occurred within 300 days, or after April 17, 2001.

In *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the United States Supreme Court found that with respect to discrete retaliatory or discriminatory acts such as termination, denial of transfer, failure to promote or refusal to hire, the statute requires plaintiff to file an EEOC charge within 300 days of the date on which the act occurred. *Id.* at 110, 114, 122 S.Ct. 2061. The Supreme Court distinguished hostile work environment claims, however, noting that their very nature involves repeated conduct. *Id.* at 115, 122 S.Ct. 2061. Regarding hostile work environment claims, the Court stated:

> The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*Id.* at 115, 122 S.Ct. 2061. The Supreme Court concluded that an EEOC charge which alleges hostile work environment is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [300–day] time period." *Id.* at 122, 122 S.Ct. 2061.

■ Defendant argues that the act of laying off plaintiff in October of 2000 constitutes an "intervening action" which separates plaintiff's tenure into two employment relationships and limits his hostile work environment charge to acts which occurred in 2001. In *Morgan,* the Supreme Court noted that with respect to hostile work environment claims, acts which occur outside the 300 days are considered timely unless (1) they are not related to acts within the 300 days or (2) they are no longer part of the same hostile environment claim due to "intervening action" by the employer. *Id.* at 118, 122 S.Ct. 2061. *Morgan* did not discuss what type of conduct constitutes "intervening action." In *Watson v. Blue Circle, Inc.,* 324 F.3d 1252 (11th Cir.2003), the Eleventh Circuit Court of Appeals found that prompt action by the employer to effectively resolve the harassment constitutes "intervening action" which renders previous conduct no longer part of the present hostile work environment claim. *Id.* at 1258–59.

In support of its argument, defendant cites *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In that case, defendant fired plaintiff in violation of Title VII and she did not timely file suit for the unlawful termination. Four years later, defendant later rehired her. Plaintiff claimed that she was entitled to seniority based on her previous employment. Plaintiff also claimed that by denying her such seniority, defendant was perpetuating the effects of past

discrimination. The Supreme Court acknowledged that the seniority gave present effect to a past act of discrimination but found that by failing to file a timely charge of discrimination, plaintiff had waived her right to recover for the past act. *Id.* at 558, 97 S.Ct. 1885. The relevant issue was whether a present violation existed in the seniority system. *Id.* at 558, 97 S.Ct. 1885. The Supreme Court found that the seniority system treated males and females equally and therefore did not violate Title VII. *Id.* at 557–58, 97 S.Ct. 1885.

*United Air Lines* does not help defendant's case. Plaintiff in *United Air Lines* argued that defendant continually violated Title VII by denying the seniority that she would have had if it had not unlawfully terminated her employment four years earlier. The court rejected plaintiff's argument, noting that she had not filed a timely charge of discrimination regarding the termination and that the seniority system did not itself violate Title VII. The plaintiff in *United Air Lines* did not assert a hostile work environment and the Supreme Court did not address whether a four-year break in employment, on account of a termination of employment, would constitute intervening action by the employer, for purposes of a hostile work environment claim.

Defendant also cites *Delaware State Coll. v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In that case, defendant denied plaintiff tenure and later terminated his employment. Plaintiff argued that defendant discriminated against him by denying tenure and that the subsequent termination constituted a continuing violation, or gave present effect to the past illegal act. The Supreme Court rejected plaintiff's argument, holding that plaintiff alleged one unlawful employment practice on the date of the tenure decision and that the termination—which was an inevitable

consequence of such decision—did not extend the limitations period on the discrimination claim. *Delaware State Coll.,* 449 U.S. at 257–58, 101 S.Ct. 498. Plaintiff in *Delaware State Coll.* did not assert a hostile work environment, and the case did not question whether a break in employment insulated prior harassment from present harassment, for purposes of a hostile work environment claim.

■ As noted, defendant argues that as a matter of law, the act of laying plaintiff off constitutes an "intervening action" which bars plaintiff's claim with respect to acts which occurred in 2000. Defendant does not cite—and the Court is not aware of—a case which addresses this issue. The issue appears to be factual. *See Morgan,* 536 U.S. at 120, 122 S.Ct. 2061 (noting that incidents occurred frequently, involved same type of conduct and were perpetrated by same individuals); *see also Fernandez v. Hy–Vee, Inc.,* 158 F.Supp.2d 1253, 1267 (D.Kan.2001) (five-month gap in employment did not preclude continuing violation doctrine where frequency and subject matter of alleged harassment were identical during both employment periods). In *Costanzo v. U.S. Postal Serv.,* No. 00–Civ–5044, 2003 WL 1701998 (S.D.N.Y. Mar.31, 2003), the court found that the transfer of plaintiff to another team with a new direct supervisor sufficiently changed plaintiff's working conditions for purposes of insulating prior harassment from present harassment. *Id.* at *11. Here, by contrast, the record supports an inference that the breaks in plaintiff's employment did not change his working conditions. Defendant therefore is not entitled to summary judgment on this claim.

## B. Hostile Work Environment Based On Conduct Which Occurred In 2001

■ Defendant argues that the conduct which occurred in 2001 is not sufficiently severe or pervasive to create an actionable hostile work environment under Title VII. To establish a prima facie case of hostile work environment under Title VII, plaintiff must show that (1) he is a member of a protected class; (2) the conduct in question was unwelcome; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) some basis exists for imputing liability to the employer. *See Brandau v. State of Kan.,* 968 F.Supp. 1416, 1420 (D.Kan.1997).

■ To prevail under a hostile work environment theory, plaintiff must show that racially-oriented conduct had the purpose or effect of unreasonably interfering with his work performance or created an intimidating, hostile or offensive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The existence of such an environment can only be determined by looking at the totality of the circumstances present in the work place, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367; *see Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The Court evaluates these factors from both a subjective and an objective viewpoint. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. The Court must consider not only the effect the discriminatory conduct actually had on plaintiff, but also the impact it likely would have had on a reasonable employee in plaintiff's position. *See Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998). "The severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintes-

sentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999). On the other hand, "isolated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct." *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1414 (10th Cir.1997).

■ In support of its argument, defendant focuses only on conduct which occurred in 2001 and asserts that the conduct occurred on only a few isolated occasions. *See Defendant's Memorandum* at 13-16. As discussed above, the record reveals a question of fact whether the conduct which occurred in 2000 was part of the same unlawful employment practice that occurred in 2001. Moreover, in ruling on defendant's summary judgment motion, the Court must accept plaintiff's version of the facts. Plaintiff alleges that he was repeatedly subjected to racially offensive slurs and jokes and that defendant did nothing to correct the situation. Construed in light most favorable to plaintiff, the record supports a finding that the harassment was sufficiently severe and pervasive to create an abusive working environment. *See O'Shea*, 185 F.3d at 1102; *Hurde v. Jobs Plus–Med*, 299 F.Supp.2d 1196, 1212 (D.Kan.2004). The Court overrules defendant's motion with respect to the hostile work environment claim.

### C. Retaliation Claim

■ Defendant asserts that plaintiff cannot establish a prima facie case of retaliation. To do so, plaintiff must show that "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1258 (10th Cir.2001). "As with claims for discriminatory discharge, if

the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. If the employer satisfies this burden of production, then, in order to prevail on [his] retaliation claim, the plaintiff must prove that the employer's articulated reason for the adverse action is pretextual, i.e. unworthy of belief." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir.2001) (quotation omitted).

■ Defendant argues that because plaintiff was not harassed during the last three weeks of his employment, he was not engaged in protected activity at the time he was laid off. *See Defendant's Memorandum* at 17. To establish that he was engaged in protected activity under Title VII, plaintiff must show that he participated in a Title VII investigation or opposed Title VII violations. 42 U.S.C. § 2000e–3(a). Plaintiff contends that during his tenure on the Olathe High School Project, until late October of 2001, he repeatedly complained to supervisors and the EEO officer about racially offensive conduct. Informal complaints to superiors constitute protected activity. *O'Neal*, 237 F.3d at 1255; *Pastran v. K–Mart, Corp.*, 210 F.3d 1201, 1205 (10th Cir.2000); *Robbins v. Jefferson County Sch. Dist. R–1*, 186 F.3d 1253, 1258 (10th Cir.1999); *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989). Therefore, the record supports an inference that plaintiff engaged in protected activity.

■ Defendant contends that plaintiff cannot establish a causal connection between the protected activity and his discharge. The Tenth Circuit has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999). Here, plaintiff

alleges that he complained in late October of 2001 and was fired on December 4, 2001. For purposes of defendant's motion, this temporal proximity is sufficient to establish causation. *See id.*

 Defendant argues that it fired plaintiff because he ignited a firework on the job site and left the job site without putting his tools away. Because defendant articulates facially neutral reasons for its action, the burden shifts to plaintiff to establish pretext. To establish pretext, plaintiff must show that "a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A particular plaintiff can accomplish this by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (quotation and citation omitted). However, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988).

 At various times, defendant has given different reasons for firing plaintiff. Allen, the general foreman, told plaintiff that he was fired because he did not have welding papers. In response to an inquiry by the EEOC and an interrogatory in this lawsuit, defendant did not mention welding papers and claimed that it fired plaintiff because (1) he had a lot of absences and tardiness; (2) work was coming to an end; and (3) he lit a firecracker on the job. Allen later testified, however, that the decision had nothing to do with absences or tardiness. *Allen Depo.* at 22:13–15. Defendant's shifting explanations regarding the reason for discharge strengthens plaintiff's pretext argument. *See Randle v. City of Aurora,* 69 F.3d 441, 455 (10th Cir.1995).

Moreover, plaintiff presents evidence that the reasons which defendant now cites—that plaintiff ignited a firework on the job site and left work without putting his tools away—are pretextual. According to plaintiff, defendant did not reprimand other employees who lit firecrackers on the job and plaintiff did not leave work without putting his tools away. On this record, the evidence sufficiently establishes an inference of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Schindler v. Bierwirth Chrysler/Plymouth, Inc.,* 15 F.Supp.2d 1054, 1057–58 (D.Kan.1998). Defendant is not entitled to summary judgment on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Partial Summary Judgment* (Doc. # 41) filed December 24, 2003 be and hereby is **OVERRULED.**